JACOB GEESING, et al * IN THE CIRCUIT COURT

    Plaintiffs * FOR ANNE ARUNDEL COUNTY

v. *

PATRICK KELLY *

    Defendant * CIVIL NO. _____

\*   \*   \*   \*   \*   \*   \*    \*    \*   RDB 10 CV 0118

PATRICK KELLY *

    Third Party Plaintiff *

v. *

ONEWEST BANK, FSB *

Serve on:    Terry Laughlin, President *
            & CEO
888 E. Walnut Street *
Pasadena, California 91101
    *

And *

National Capital Title & Escrow, LLC *

Serve on:    Michael Sacks
600 Jefferson Plaza, Suite 101 *
Rockville, Maryland 20852
    *

And *

JACOB GIESING, CARY M. WARD *

and HOWARD BIERMAN *
Serve on: Jacob Giesing
4520 East West Highway, Suite 200 *
Bethesda, Maryland 20814
    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2010 JAN 15 P 4:00
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

Hollis, Cronan
& Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

## PATRICK KELLY'S VERIFIED THIRD PARTY COMPLAINT

## AND DEMAND FOR JURY TRIAL

Defendant/Third-Party Plaintiff, Patrick Kelly (hereinafter "Mr. Kelly"), through his attorneys, Philip Cronan and Hollis, Cronan & Coale, LLP, brings these third party claims against OneWest, FSB, Plaintiffs, Jacob Geesing, Cary M. Ward and Howard Bierman, in their representative capacities, in the pending foreclosure case, as well as against National Capital Title & Escrow, LLC, for its role and actions in originating the subject loan to this foreclosure action, and in support of Mr. Kelly's third-party claims against Third-Party Defendants, he states as follows:

## DEFINITIONS

1.  Any references to Third-Party Defendants or Defendants shall mean all Third-Party Defendants named in the caption of this matter.

## JURISDICTION AND VENUE

2.  Jurisdiction and Venue are proper under Annotated Code of Maryland, Courts and Judicial Proceedings, § 6-202(3) in that Mr. Kelly is a resident of Anne Arundel County, Maryland and works and contracts business in Anne Arundel County.

3.  Mr. Kelly is a citizen of Maryland and resides at 1909 Orchard Point Road, Pasadena, Maryland (hereinafter the "Property").

4.  Third-Party Defendants are Maryland residents and/or systematically and continually transact business in the State of Maryland and Anne Arundel County.

## BACKGROUND FACTS

5.  Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

Hollis, Cronan
& Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

6.  On June 20, 2007, Mr. Kelly refinanced his home and obtained a loan in the amount of $1,066,500.

7.  Upon information and belief, Mr. Kelly's loan was funded by an IndyMac Bank ("IndyMac") correspondent who arranged the transaction with the sole intent to immediately flip the loan to IndyMac. This belief is based on the fact that the loan was assigned to IndyMac Bank contemporaneously with Mr. Kelly's June 20, 2007, settlement.

8.  The following set for circumstances/facts explain the relationship between IndyMac and defendant, One West:

a.  IndyMac operated until July 2008, as a thrift/mortgage banker. It provided financing for the acquisition, development and improvement of single-family homes, as well as financing secured by single-family homes.

b.  On July 11, 2008, citing liquidity concerns (which resulted, in part, because IndyMac was required to acquire back many of the defaulting, predatory loans it had flipped to various mortgage back securities), IndyMac was placed into conservatorship by the Federal Deposit Insurance Corporation (hereinafter the "FDIC"). A bridge bank, IndyMac Federal Bank, FSB, was established to assume control of IndyMac's former assets and secured liabilities such as mortgage servicing rights and/or ownership of Mr. Kelly's home mortgage, and the bridge bank was put into conservatorship under the control of the FDIC.

c.  In January 2009, the FDIC agreed to sell IndyMac Federal Bank to IMB Management Holdings Co., LLC (hereinafter "IBM Management").

d.  On information and belief, in order to receive the FDIC's loan loss protection, IMB Management had agreed that OneWest Bank, FSB, would continue the streamlined loan modification program implemented by FDIC Chairman, Sheila Bair. This belief is based

Iollis, Cronan
ı Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

upon public statements and documents which made such an inference or implied or direct statement.

      e.  On March 19, 2009, the FDIC completed the sale of IndyMac Federal Bank, FSB, Pasadena, California, along with all deposits and secured liabilities to OneWest Bank, FSB, Pasadena, California (hereinafter "One West Bank, FSB,").  At the time of the sale, OneWest was a newly formed federal savings bank organized by IMB HoldCo LLC, and other affiliates.

9.  OneWest Bank, FSB,acquired most of the assets of the failed institution IndyMac from FDIC and a significant market-rate discount than the face value of the assets. These assets include the profitable servicing rights of thousands of mortgage loans which are securitized into Mortgage Backed Securities (hereinafter "MSB").

10. OneWest also knowingly acquired assets which are in default or were at a significant risk of default.  This belief is based upon public and private knowledge available to OneWest Bank, FSB, concerning the reasons IndyMac became a failed institution due to the "toxic" loans it originated.

11. As part of the sale to OneWest Bank, FSB, a "Shared –Loss Agreement" (hereinafter the "Agreement") was executed on March 19, 2009, between the FDIC and OneWest Bank, FSB.  A complete copy of the Agreement is attached hereto as Exhibit 1.

12. Article III, Section 3.2 of the Agreement requires OneWest Bank, FSB, among other things, to "(v) comply with the terms of the Guidelines for any Shared-Loss Loans meeting the requirements set therein.  Subject to the approval of the FDIC, the purchaser may propose exceptions to the Program for a group of loans with similar characteristics, with the objectives of (1) minimizing the loss to the Purchaser and the FDIC

Iollis, Cronan
ι Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

and (2) maximize the opportunity for qualified homebuyers to remain in their homes with affordable mortgage payments."

13. The term "Program" referred to in Section 3.2 references the modification programs previously approved by the Board of Directors of IndyMac Federal Bank, FSB, in Conservatorship; (b) the FDIC Mortgage Loan Modification Program attached as Exhibit 5 of the Agreement and (c) any other modifications either to an individual or to a group of borrowers, with prior written consent of the FDIC.

14. Exhibit 5 to the Agreement entitled "FDIC Mortgage Loan Modification Program" sets forth specific guidelines "to modify the terms of certain residential mortgage loans so as to improve affordability, increase the probability of performance, allow borrowers to remain in their homes and increase the value of the loans to the FDIC and assignees."

15. IndyMac, together with the aid and assistance of National Capital Title, entered into this transaction and obtained an unlawful interest in the Property. It falsely represented to other parties, including One West Bank and Deutsche Bank National Trust Company and others on the secondary mortgage loan market that the loan subject to this foreclosure was bona fide and not in violation of any laws.

16. Because the subject loan was illegal, unfair and deceptive, Deutsche Bank National Trust Company cannot, as a matter of law, commence a foreclosure on their behalf or the behalf of another since they could not have acquired a greater interest than its assignor. In the alternative, Deutsche Bank National Trust Company had notice of the illegal, unfair and deceptive loan subject to this foreclosure at the time it acquired the loan and conducted no reasonable inquiry into the loan or has even attempted to have One West Bank or IndyMac repurchase the loan.

Third Party Complaint
Page 5 of 31

17. As a result the illegal, unfair, and deceptive acts of National Capital Title, Deutsche Bank National Trust Company, One West Bank and IndyMac, Mr. Kelly faces foreclosure and has had his equity stolen from him, he will suffer further damages if the foreclosure sale of the illegal, unfair, and deceptive acts is not prevented.

18. IndyMac Bank lured and falsely represented to Mr. Kelly through a series of letters and offers of loss mitigation that he would not be subject to foreclosure and the negative effects a foreclosure would have on his credit report.

19. Maryland's Consumer Protection Act, § 13-301 Md. Com. Law Art, *et seq.* (hereinafter "MCPA") and the Maryland Mortgage Fraud Protection Act § 7-401 Md. Real Prop., *et seq.* (hereinafter "MMFPC") are fair housing statutes enacted by the Maryland General Assembly for the express purpose to prohibit the activities like those at issue in the Complaint while protecting homeowners.

## STATEMENT OF FACTS

20. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

21. Mr. Kelly is a citizen of Maryland and resides at 1909 Orchard Point Road, Pasadena, Maryland (hereinafter the "Property").

22. On June 27, 2005, Mr. Kelly and his wife, Andrea Kelly, purchased the real property located at 1909 Orchard Point Road, Pasadena, Maryland (hereinafter the "Property") for $925,000, said purchase being secured by a Deed of Trust.

23. In 2007, the parties suffered marital strife and separated with the intent to permanently end their marriage.

24. On or about April 1, 2007, Mr. and Mrs. Kelly executed a Marital Settlement

Iollis, Cronan
ι Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

Agreement, which provided for, *inter alai,* Mrs. Kelly conveying her entire interest in the Property to Mr. Kelly.  Further, Mr. Kelly was obligated to refinance the property in his sole name.

25. In an effort to comply with the Marital Settlement Agreement, Mr. Kelly contacted National Capital Title & Escrow, LLC (hereinafter "National Capital Title"), to discuss obtaining a loan to refinance the Property.

26. Over the course of the next several months, Mr. Kelly and National Capital Title arranged for a mortgage transaction which would effectively remove Mrs. Kelly's title ownership in the Property and remove her from any liability associated with the Property.

27. As part of the loan application process, the lender, IndyMac, obtained an appraisal of the property dated April 18, 2007, which provided the fair market value of the Property was $1,513,500 (sales comparison approach) to $1,576,381 (cost approach).

28. National Capital Title arranged for a mortgage transaction promising Mr. Kelly affordable monthly mortgage payments.  However, in reality, what National Capital Title arranged for Mr. Kelly was a mortgage scheme that stripped the equity from his Property, and stuck Mr. Kelly with a substantially unaffordable loan, based on his income, that is now subject to default and foreclosure.  The loan subject to foreclosure violated state and federal laws in several material aspects including several which are outlined below.

29. On June 20, 2007, Mr. Kelly closed on his refinance.  Neither prior to or at closing did National Capital Title provide Mr. Kelly with a Good Faith Estimate with all fees disclosed so that he could see what the true cost of the loan was.

30. National Capital Title failed to include the Uniform Residential Loan Application

Iollis, Cronan
t Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 7 of 31

(1003) in the closing package making it impossible for Mr. Kelly to know whether he received the rate and terms requested.

31. National Capital Title failed to provide a written counter offer within 30 days of Mr. Kelly's initial application.

32. The loan currently subject to foreclosure was arranged by National Capital Title. But for its negligent supervision the subject loan would not have occurred and the Court and Mr. Kelly would not have to deal with this situation.

33. In or about August 2007, Mr. Kelly determined that he needed to sell his house in order to avoid financial disaster. Upon making said determination, Mr. Kelly learned that the value of his home was considerably less than $1,500,000 as represented by the appraisal provided by IndyMac.

34. In September 2007, Mr. Kelly contacted IndyMac to express his concerns about the value of the home not being anywhere close to the value that IndyMac's appraiser valued the property and his financial hardships.

35. Prior to October 11, 2007, in financial distress like many other homeowners, Mr. Kelly contacted IndyMac Mortgage Services to request a loan modification in an effort to reduce his monthly mortgage payment of $7,470.32.

36. Under Maryland law, a servicer is "a person responsible for collection and payment of principal, interest, escrow, and other moneys under an original mortgage." Md. Ann. Code, Comm. Law, Art. § 13-316(a)(3). Maryland law also defines a servicer as a person who (1) [e]ngages in whole or in part in the business of servicing mortgage loans for others; (2) [c]ollects or otherwise receives payments on mortgage loans directly from borrowers for distribution to any other person."

Iollis, Cronan
t Coale, LLP
08 East Dover Street
ton, Maryland 21601
Tel: 410.822.8822

37. By an undated letter, Mr. Kelly contacted IndyMac and explained his financial hardships and requested that IndyMac suspend his monthly mortgage payments while he fought through his financial difficulties.  Mr. Kelly also explained his willingness to pay the Property taxes and insurance during the suspended period of time.  A copy of Mr. Kelly's letter is attached hereto as Exhibit 2.

38. On or about October 1, 2007, Mr. Kelly retained a Florida attorney, Brian Korte, to represent him in modifying his loan or otherwise protecting his property.

39. On or about October 15, 2007, Brian Korte Brian Korte sent a loan modification worksheet to IndyMac via FedEx.  A copy of Mr. Korte's letter is attached hereto as Exhibit 3.

40. On or about December 4, 2007, IndyMac mailed Mr. Kelly a letter in response to Mr. Korte's letter dated October 15, 2007.  In its letter, IndyMac acknowledged that Mr. Kelly was "requesting mortgage assistance" due to his financial hardship.  IndyMac further noted that Mr. Kelly's loan was referred "to the Vice President of the Loss Mitigation Department for Review."  IndyMac then advised that it had "agreed to forebear from foreclosure until April 2008" provided Mr. Kelly satisfied certain conditions, which included, *inter alia,* that Mr. Kelly list the property for sale at fair market value and "provide a deed to the property to IndyMac on or before May 30, 2008 with clear and marketable title."  A copy of IndyMac's letter dated December 4, 2007, is attached hereto as Exhibit 4.

41. On or about January 7, 2008, Brian Korte wrote a letter accepting the terms of IndyMac's offer as set forth in its letter dated December 4, 2007.  A copy of Mr. Korte's letter dated January 7, 2008, is attached hereto as Exhibit 5.

42. From December 4, 2007, and thereafter, Mr. Kelly complied with the conditions set

Iollis, Cronan
ι Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

forth by IndyMac in its letter dated December 4, 2007.

43. On or about March 6, 2008, IndyMac contacted Mr. Kelly by letter and notified him that his loan was "in serious default" because he had not made his required payments. IndyMac further notified Mr. Kelly that prior to April 7, 2008, he had to cure his default in the amount of $23,093.18 plus additional monthly payments, late charges and fees which may become due or IndyMac would accelerate his mortgage and initiate foreclosure proceedings. A copy of IndyMac's letter dated March 6, 2008, is attached hereto as Exhibit 6.

44. By an undated letter to IndyMac, Mr. Kelly addressed Indymac's letter dated March 6, 2008. Mr. Kelly explained his understanding of the parties' agreement and that the letter must be a mistake. He further reiterated that he had complied with their agreement. Further, Mr. Kelly advised IndyMac to contact his attorney, Brian Korte, with any questions and provided Mr. Korte's contact information. A letter of Mr. Kelly's letter is attached hereto as Exhibit 7.

45. On or about March 19, 2008, Brian Korte mailed a certified letter to IndyMac addressing the apparent miscommunication as set forth in IndyMac's letter dated March 6, 2008. In this letter, Mr. Korte reiterated that Mr. Kelly had continuously complied with the terms of the forementioned agreement and that Mr. Kelly intended to "living up to the agreement set forth in the letter from IndyMac dated December 4, 2007…" A copy of Mr. Korte's letter dated March 19, 2009, is attached hereto as Exhibit 8.

46. IndyMac did not respond to Mr. Kelly's undated letter or Mr. Korte's letter dated March 19, 2009.

47. IndyMac continued to report to various credit bureaus that Mr. Kelly had failed to pay

Iollis, Cronan
τ Coale, LLP
08 East Dover Street
ton, Maryland 21601
Tel: 410.822.8822

his monthly mortgage loan, which caused the cessation of his personal and business credit. Mr. Kelly's failure to secure personal and business credit made it impossible to operate his business leading to more severe financial hardship and making it impossible to obtain financial security.

48. IndyMac intended to bait Mr. Kelly into believing he had received a favorable loan modification allowing him the opportunity to sell the property and avoid foreclosure and a possible deficiency judgment.

49. As discussed *infra,* on December 4, 2007, IndyMac was the loan servicer. A servicer is "a person responsible for collection and payment of principal, interest, escrow, and other moneys under an original mortgage." Md. Ann. Code, Comm. Law, Art. § 13-316(a)(3). Maryland law also defines a servicer as a person who (1) [e]ngages in whole or in part in the business of servicing mortgage loans for others; (2) [c]ollects or otherwise receives payments on mortgage loans directly from borrowers for distribution to any other person."

50. A servicer does not have an ownership interest in the loan. Despite not having an ownership interest in the loan, IndyMac conditioned its forbearance agreement, as set forth in its letter dated December 2, 2007, on Mr. Kelly *"provid[ing] the deed to the property to IndyMac Bank on or before May 30, 2008 with clear and marketable title." Emphasis added.*

51. IndyMac failed to comply with the terms of the agreement set forth in IndyMac's letter dated December 4, 2007, and its refused to have any substantive discussion concerning the matter with Mr. Kelly or his attorney, Brian Korte. Consequently, by letter dated June 10, 2008, Mr. Kelly advised IndyMac that he thereby exercised his right of rescission

Iollis, Cronan
z Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

pursuant to the Federal Truth in Lending Act. A copy of Mr. Kelly's letter is attached hereto as Exhibit 9.

52. Neither IndyMac nor OneWest addressed Mr. Kelly's rescission within the time prescribed by federal statute.

53. As a result of IndyMac's and/or OneWest's failure to respond to Mr. Kelly's notice of rescission as prescribed by statute, Mr. Kelly, by letter dated May 19, 2009, again notified IndyMac that he was exercising his right of rescission pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1640(a). A copy of Mr. Kelly's letter dated July 20, 2008, is attached hereto as Exhibit 10.

## COUNT I: VIOLATION OF THE MCPA

54. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

55. Maryland's Consumer Protection Act, § 13-301 Md. Comm. Law Art., *et seq.* (hereinafter the "MCPA") governs the relationship between OneWest and Mr. Kelly.

56. For homeowners in Maryland the MCPA works to protect their interests from unfair and deceptive practices and ensure a level, fair playing field with merchants.

57. The Maryland Legislature stated:

> The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced. Md. Ann. Code, Comm. Law, § 13.102 (a)(2).

58. The Legislature's purpose in enacting the MCAP is:

> The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from

Iollis, Cronan
t Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.  Md. Ann. Code, Comm. Law, § 13.102 (b)(3).

59. Md. Ann. Code, Comm. Law, § 13.101 (d) provides:

> *Consumer credit, debts, goods, realty, and services.*- "Consumer credit", "consumer debts", "consumer goods", "consumer realty", and "consumer services" mean, respectively, credit, debts or obligations, goods, real property, and services which are primarily for personal, household, family, or agricultural purposes.

60. Mr. Kelly is a Consumer.  The loan in question was primarily for his personal, household or family purpose.

61. Md. Ann. Code, Comm. Law, § 13.101 (g) provides:

> *Merchant.*- "Merchant" means a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty, or consumer credit.

62. Defendants are Merchants.

63. Third-Party Defendants have committed unfair or deceptive trade practices by: (i) making a false or misleading oral or written statement(s) or other representation of any kind which had the capacity, tendency, or effect of deceiving or misleading Mr. Kelly ; and (ii) failing to state a material fact and the failure deceived or tended to deceive Mr. Kelly.

64. Third-Party Defendants have committed unfair or deceptive trade practices by failing to provide Mr. Kelly with a Good Faith Estimate as required by law.

## COUNT II: MARYLAND MORTGAGE FRAUD PROTECTION ACT

65. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

66. The Maryland Mortgage Fraud Protection Act, § 7-401 Md. Real Prop., *et seq.*,

Iollis, Cronan
τ Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 13 of 31

(hereinafter the "MMFPA") governs the relationship between IndyMac and/or OneWest, as a mortgage servicer, and Mr. Kelly.

67. Md. Ann. Code, Real Prop. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. Mr. Kelly is a record owner of 1909 Orchard Point Road, Pasadena, Maryland, and, therefore, is a Homeowner.

68. Md. Ann. Code, Real Prop. § 7-401(e) provides: "Mortgage lending process...includes [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing and funding of a mortgage loan."

69. Md. Ann. Code, Financial Institutions Code. § 11-501(k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

70. The MMFPA works to protect Homeowners' interests from misstatements, misrepresentations and omissions by mortgage servicers like IndyMac and OneWest and ensure a level, fair playing field between borrowers and professionals.

71. Mr. Kelly is a homeowner in the Mortgage Lending Process as defined by MMFPA since the actions in dispute in this lawsuit involve the servicing of his residential mortgage loan.

72. Md. Ann. Code, Real Prop. § 7-401(d) provides: "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

(1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

Iollis, Cronan
τ Coale, LLP
08 East Dover Street
ton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 14 of 31

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending Process;

(3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(4) Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1), (2), or (3) of this section;

(5) Conspiring to violate any of the provisions of item (1), (2), (3), or (4) of this section; or

(6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

73. Defendants have committed mortgage fraud by violating the prohibitions set forth in

Md. Ann. Code, Real Prop. § 7-401(d).  Said violations include, but are not limited to:

> a. Defendants have knowingly made deliberate misstatements, misrepresentations and omissions during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by Mr. Kelly.
>
> b. Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by Mr. Kelly.  Said document includes, but is not limited to, an inflated appraisal of the Property.

74. Mr. Kelly has suffered damages as a result of Third-Party Defendant's violations of

the MMFCA.

Third Party Complaint
Page 15 of 31

Iollis, Cronan
τ Coale, LLP
08 East Dover Street
:ton, Maryland 21601
Tel: 410.822.8822

## COUNT III:  NEGLIGENCE

75. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

76. Third-Party Defendants had a duty to exercise reasonable care in processing the mortgage loan application submitted by Mr. Kelly and in approving him for the mortgage loan.  The duty to exercise reasonable care included, but was not limited to, providing correct information to the underwriting department about Mr. Kelly's financial condition, providing accurate information to Mr. Kelly about the loan within at least three (3) days before closing, providing a fair and accurate value of the Property at the time the appraisal was completed, and providing accurate documentation to Mr. Kelly at closing.

77. Third-Party Defendants had a duty to exercise reasonable care in negotiating loss mitigation with Mr. Kelly said duty included, but was not limited to, making fair and accurate representations about the terms of said negotiations and authority to perform the negotiated settlement.

78. Third-Party Defendants had a duty to adhere to all applicable banking and lending regulations including, but not limited to, the Truth in Lending Act, Maryland's Consumer Protection Act and Maryland Mortgage Fraud Protection Act.

79. Third-Party Defendants breached the duties owed to Mr. Kelly by:

    a. Approving Mr. Kelly for a mortgage with a monthly payment substantially greater than Mr. Kelly's ability to pay and the Third-Party Defendants knew or should have reasonably known that Mr. Kelly could not afford said monthly mortgage payments;

Iollis, Cronan  
τ Coale, LLP  
08 East Dover Street  
:ton, Maryland 21601  
Tel: 410.822.8822

b. Accepting and approving an appraisal that grossly overvalued the Property in an effort to secure financing for Mr. Kelly; and

c. Violating numerous provisions of the Truth in Lending Act, violating Maryland's Consumer Protection Act and violating Maryland Mortgage Fraud Protection Act.

80. But for Third-Party Defendants' breach of their duties, Mr. Kelly would not be in the financial position he currently faces. Specifically, Mr. Kelly would not have been approved for the relevant mortgage under the terms set forth therein.

81. Mr. Kelly has suffered damages as a result of Third-Party Defendants' breach.

## COUNT IV: INTENTIONAL MISREPRESENTATION

82. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

83. In or about August 2007, Mr. Kelly determined that he needed to sell his house in order to avoid financial disaster. Upon making said determination, Mr. Kelly learned that the value of his home was considerably less than $1,500,000 as represented by the appraisal provided by IndyMac.

84. In September 2007, Mr. Kelly contacted IndyMac to express his concerns about the value of the home not being anywhere close to the value that IndyMac's appraiser valued the property and his financial hardships.

85. Prior to October 11, 2007, in financial distress like many other homeowners, Mr. Kelly contacted IndMac Mortgage Services to request a loan modification in an effort to reduce his monthly mortgage payment of $7,470.32.

Iollis, Cronan
t Coale, LLP
08 East Dover Street
ton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 17 of 31

86. By an undated letter, Mr. Kelly contacted IndyMac and explained his financial hardships and requested that IndyMac suspend his monthly mortgage payments while he fought through his financial difficulties.  Mr. Kelly also explained his willingness to pay the Property taxes and insurance during the suspended period of time.  See Exhibit 2.

87. On or about October 1, 2007, Mr. Kelly retained a Florida attorney, Brian Korte, to represent him in modifying his loan or otherwise protecting his property.

88. On or about October 15, 2007, Brian Korte Brian Korte sent a loan modification worksheet to IndyMac via FedEx.  See Exhibit 3.

89. On or about December 4, 2007, IndyMac mailed Mr. Kelly a letter in response to Mr. Korte's letter dated October 15, 2007.  In its letter, IndyMac acknowledged that Mr. Kelly was "requesting mortgage assistance" due to his financial hardship.  IndyMac further noted that Mr. Kelly's loan was referred "to the Vice President of the Loss Mitigation Department for Review."  IndyMac then advised that it had "agreed to forebear from foreclosure until April 2008" provided Mr. Kelly satisfied the following conditions (see Exhibit 4):

a.  Mr. Kelly7 continued to pay all taxes and insurance premiums and keep them current;

b.  Mr. Kelly lists the property for sale with a licensed realtor at fair market value;

c.  Mr. Kelly would deed the property to IndyMac if it did not receive a mutually agreeable contract for sale by April 2008;

d.  Mr. Kelly would not waste the property;

e.  Mr. Kelly would turn over the property in broom swept condition and with all appliances and fixtures in working condition; and

f.  Mr. Kelly would provide the deed to the property to IndyMac Bank on or before May 30, 2008, with clear and marketable title.

90. On or about January 7, 2008, Brian Korte wrote a letter accepting the terms of IndyMac's offer as set forth in its letter dated December 4, 2007.  See Exhibit 5.

91. From December 4, 2007, and thereafter, Mr. Kelly complied with the conditions set forth by IndyMac in its letter dated December 4, 2007.

92. On or about March 6, 2008, IndyMac contacted Mr. Kelly by letter and notified him that his loan was "in serious default" because he had not made his required payments. IndyMac further notified Mr. Kelly that prior to April 7, 2008, he had to cure his default in the amount of $23,093.18 plus additional monthly payments, late charges and fees which may become due or IndyMac would accelerate his mortgage and initiate foreclosure proceedings.  See Exhibit 6.

93. The representations by IndyMac that it would forebear from foreclosure until April 2008, constitute a false representation of a material fact to Mr. Kelly.

94. IndyMac knew its representations were false when it made them.

95. Smith incurred damages as a result of IndyMac's intentional misrepresentations.

## COUNT V: NEGLIGENT MISREPRESENTATION

96. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

97. Agents or employees of the Third-Party Defendants negligently and recklessly made false and misleading representations and omissions as alleged above, including but not limited to, the false and misleading representation as to the actual and true terms and financial conditions of the mortgage loan transaction, intending that Mr. Kelly reasonably rely upon these false and misleading representations and omissions to his detriment, which Mr. Kelly did rely upon to his detriment.

Hollis, Cronan
& Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

98. As a direct and proximate result of these false and misleading statements, representations and omissions, Mr. Kelly was induced, *ab initio*, to enter into a mortgage loan transaction that was based on incorrect information.

99. As a direct and proximate result of these false and misleading statements, representations and omissions, Mr. Kelly was induced, *ab initio*, to enter into an agreement based on the belief Third-Party Defendant, OneWest, would forebear foreclosure, which it failed to do.

100. In addition, Mr. Kelly believes that IndyMac raised the actual interest rate of his loan at settlement by .402 % over what had been promised.  Over the life of the loan this will result in tens or thousands of dollars in additional damages or increased fess to Mr. Kelly.

101. Third-Party Defendants, their agents and employees, owed Mr. Kelly a duty of care.

102. Third-Party Defendants recklessly and negligently breached their duty of care owed to Mr. Kelly concealing material facts from him or misrepresenting their obligations and rights under Maryland and Federal law as set forth herein.

103. Third-Party Defendants knew or should have known that Mr. Kelly would reasonably rely on the representations and concealments, which as erroneous, would cause Mr. Kelly loss and injury.

104. Mr. Kelly justifiably and reasonably took actions to his detriment as alleged herein, in reliance on the false representations and concealments.

## COUNT VI:  VIOLATION OF THE MARYLAND FINDER'S FEE ACT

105. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

Iollis, Cronan
ɛ Coale, LLP
08 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 20 of 31

106. The mortgage transaction entered into by Mr. Kelly that is the subject of this action is governed by the Maryland Finder's Fee Act, Md. Code Ann., Com. Law § 12-801 *et seq.*

107. Section 12-805(d)(1) of the Finder's Fee Act mandates that "[a] finder's fee may not be charged unless it is pursuant to a written agreement between the mortgage broker and the borrower which is separate and distinct from any other document."

108. Section 12-805(d)(2) also mandates that "(i) [t]he terms of the proposed agreement shall disclosed to the borrower before the mortgage broker undertakes to assist the borrower in obtaining a loan or advance of money"; and "(ii) [s]hall the amount of the finder's fee."

109. Section 12-805(d)(3) mandates that "[a] copy of the agreement, dated and signed by the mortgage broker and the borrower, shall be provided to the borrower within 10 business days after the date the loan application is completed" (emphasis added).

110. Section 12-808 prohibits a broker from accepting any fee when it is also acting as an agent of a title insurer in a mortgage transaction where it places its loan.

111. National Capital Title violated the Maryland Finder's Fee Act, Md. Code Ann., Com. Law § 12-801 *et seq.,* by not disclosing all the finders's fees it would receive in the transaction directly and indirectly, and by failing to give any statement as to the fee percentage.

112. Further, National Capital Title failed to provide a copy of the signed agreement to Mr. Kelly within ten (10) days of their application for a mortgage loan or at any time thereafter.

113. As a result of violating the Maryland Finder's Fee Act, Mr. Kelly has been

Hollis, Cronan
& Coale, LLP
208 East Dover Street
ston, Maryland 21601
Tel: 410.822.8822

damaged in that National Capital Mortgage has charged illegal, predatory fees. National Capital Mortgage is liable for the underlying damages available to Mr. Kelly under the Maryland Finder's Fee Act.

## COUNT VII: DECLARATORY JUDGMENT AND REQUEST TO STAY THE FORECLOSURE PROCEDINGS

114. Mr. Kelly incorporates by reference all of the allegations stated in the preceding paragraphs as if fully stated herein.

115. Mr. Kelly seeks a declaration as to whether he properly rescinded the loan at question as a result of third-party defendant's violations of the Federal Truth in Lending Act ("TILA") and the effect of said rescission.

116. An actual controversy exists as to whether Mr. Kelly rescinded the loan in question and, if so, whether the security interest held by IndyMac (and now by OneWest) is secured allowing it to proceed with a foreclosure.

117. Declaratory relief is appropriate pursuant to Md. Code Ann., Cts. & Jud. Proc., §3-403.

118. Mr. Kelly is entitled to have the foreclosure proceedings stayed since the actions of Third-Party Defendants are impermissible pursuant to federal and state law.

119. On June 20, 2007, Mr. Kelly completed a refinance transaction with National Capital Title for the purpose of satisfying his obligation to refinance the property in his individual name in accord with a previously executed marital settlement agreement.

120. Pursuant to his rights under the TILA, Mr. Kelly has rescinded his refinance transaction by letters dated June 10, 2008, and July 20, 2008, notifying IndyMac Bank. Exhibit 10; 15 U.S.C. § 1635, Reg. Z §§ 226.15, 226.23.

121. Briefly stated, the loan which is the basis of the foreclosure action comes within the

Iollis, Cronan
ι Coale, LLP
08 East Dover Street
iton, Maryland 21601
Tel: 410.822.8822

ambit of the TILA.  National Capital Title violated certain provisions of that Act.  As the result of those violations, the defendant is entitled to cancel the loan transaction thereby voiding the deed of trust.  15 U.S.C. § 1635(b); Reg. Z §§ 226.15(d)(1), 226.23(d)(1); *Pacific Shore Funding v. Lozo, 42 Cal. Rptr. 3d 283, 290-91 (Cal, App. 2dist. 2006): Hobbs tumher Co. v. Shidell, 326* NE2d 706, 709 (Ohio Ct. *Com.* P1. 1974).

122.  Once a borrower exercises his TILA rescission, the promissory note is also voided as a matter of law. *Arnold v. W.D.L. Investments, Inc.,* 703 F.2d 848, 849 (5th Cir. 1983); *Elsner v. Albrecht,* 185 Mich. App. 72. 460 N.W'.2d 232 (1990).

123.  Mr. Kelly's cancellation is effective upon upon mailing the letters. Mr. Kelly's cancellation voids the security interest. The Plaintiffs and note holder should be restrained and enjoined from foreclosing on a void security instrument. A valid security interest is a condition precedent; a prerequisite, to a foreclosure sale. Rule 14-203(a)(1).

124.  Plaintiff have initiated foreclosure proceedings and seek to schedule a foreclosure sale.  A foreclosure sale will result in immediate, substantial, and irreparable harm to the defendant, and potential eviction, if *the sale* is permitted to occur before a full adversary hearing, after a limited period of discovery, may occur.  Certainly, the very real possibility of becoming homeless or wrongly losing title to one's property to a third party purchaser, demonstrates the clear possibility of irreparable harm if the foreclosure procedure is not stayed in accord with Maryland Rule 14-211.

125.  The TILA was enacted on may 29, 1968, at Title I of the Consumer Credit Protection Action (Public law 90-132), thus the TILA implemented by Regulation Z (12 C.F.R. 226) became effective July 1, 1969.

126.  The intent and purpose the TILA is to ensure that credit terms are fully

Iollis, Cronan
ι Coale, LLP
08 East Dover Street
ton, Maryland 21601
Tel: 410.822.8822

disclosed in a meaningful way allowing borrowers to compare credit terms more readily.  15 U.S.C. 1601.1(a).

127.  The TILA also promotes the informed use of credit and brings an awareness to a potential borrower, which he did not have before the necessary disclosures.  Regulation Z, 12 C.F.R. 226 1(b).

128.  A creditor who conceals or misrepresents a term or fails to explain its impact whether at the outset or during the course of the loan, whether paid outside closing or at or during closing, violates the TILA and is subject to civil liability.  15 U.S.C. 1640(a).

129.  At or before Settlement, Mr. Kelly was provided a HUD-1 Settlement Statement.  A copy of the HUD-1 Settlement Statement is attached hereto as Exhibit 11.

130.  National Capital Title violated TILA when Mr. Kelly paid a "Funding Fee" in the amount of $725 (see line 806 of the HUD-1 Settlement Statement); a Broker Processing Fee in the amount of $750 (see line 807 of the HUD-1 Settlement Statement); a Broker Fee in the amount of $1,000 (see line 811 of the HUD-1 Settlement Statement); and a Broker Compensation in the amount of $10,655 paid by IndyMac to National Capital Title (see line 810 of the HUD-1 Settlement Statement).

131.  IndyMac failed to disclose the Broker Compensation Fee within three (3) days of application on a Good Faith Estimate.

132.  National Capital Title violated TILA when it failed to accurately disclose to Mr. Kelly the finance charges, the amount financed, and the Annual Percentage Rate ("APR").  A copy of the final TILA Disclosure is attached hereto as Exhibit 12.  A copy of the original TILA Disclosure provided to Mr. Kelly by National Capital Title, is attached hereto as Exhibit 13.  A brief comparison of the two TILA disclosures shows a dramatic

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

difference between the APRs.

133.  The Finance Charge on the Truth in Lending Disclosure Statement (Exhibit 12) is incorrect.  The Truth in Lending Disclosure Statement (Exhibit 12) shows the Finance Charge as $1,975,001.77, which is understated by more than $100.

134.  The amount financed as set forth on Line 202 of the HUD-1 is not accurately reflected in the Amount Financed as stated on the Truth in Lending Disclosure Statement. This constitutes an inaccurate statement of the finance charges under 15 U.S.C. § 1605(f)(2)(A), which constitutes a failure to make a material disclosure as defined by 15 U.S.C. §1601(u), and is a violation of TILA.

134.  The APR is, by a combination of the understatement of the finance charges and the overstatement of the amount financed, inaccurate, constituting a failure to make a material disclosure, the understatement of the APR exceeding 1/8 of 1 percent, which is a violation of 15 U.S.C. 1606(c).

135.  Mr. Kelly received only one copy of his Notice of Right to Cancel, which is a violation of 15 U.S.C. 41635(a) and 12 C.F.R. § 226.23(b).

136.  National Capital Title violated TILA by not including the Uniform Residential Loan Applications ("1003") in the closing package.  Failing to include the 1003 in the closing package makes it impossible for Mr. Kelly to know if he received the annual percentage interest rate and terms he requested.

137.  Any one of the forgoing violations entitles the defendant to cancel the loan transaction for up to 3 years after consummation of the transaction. 15 U.S.C. 41635(1); 12 C.F.R. § 226.23(a)(3).

138.  By letter mailed on June 10, 2008, Mr. Kelly notified IndyMac of his

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

cancellation of the loan transaction.  See Exhibit 9.  The notice is effective upon mailing. 12 C.F.R. §226.23(a)(2).

139.  IndyMac did not respond to Mr. Kelly's letter of rescission dated June 10, 2008.  On July 20, 2008, Mr. Kelly sent a second letter notifying IndyMac of his cancellation of the loan transaction.  See Exhibit 10.

140.  Mr. Kelly's rescission under 15 U.S.C. 41 §1635(a) voids the security interest given by him and he is not liable for any finance or other charges. 15 U.S.C. §1635(a): 12 C.F.R. §226.23(d)(1).

141.  A valid security interest is a condition precedent, a prerequisite, to a foreclosure sale under Rule 14-205, consequently, the Plaintiffs, having no valid lien and have no right to proceed with the foreclosure.

142.  The purpose of the Truth in Lending Act and the regulations promulgated under it by the Federal Reserve Board is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. 41 §1601,

143.  The TILA is a remedial statue and should be construed liberally in favor of the consumer in order to effectuate the congressional purpose. *Eby v. Reb Really, Inc., 495* F.2d 646, 650, 9th Cir. 1974).  It is not to be construed so liberally or loosely, however, as to lose sight of the balance which Congress sought to strike between borrowers and lenders. *Downey v. Whaley-Lamb Ford Sales, Inc..* 607 F.2d 1093, 1095 (5 Cir. 1979). *Dorsey v. Read', 228* Md. *161. 172* (1980).

144.  Violations of TILA cannot be explained away as merely "technical" and, thus, *de minimus. Jenkins v. Landmark Mortgage Corp. 696* F.Supp. 1089, 1095 (W.D. Va. 1988)

Hollis, Cronan & Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

(citing Mars v. *Spartanburg Chrysler Plymouth,* 713 F.2d 65 (4th Cir. 1983).

145. When the consumer rescinds, the creditor's lien is automatically void.

Therefore the creditor has nothing to foreclose. This is true notwithstanding the fact that the

security interest is perfected.  Elwin Griffith. *Truth in Lending - The* Right *of Rescission,*

*Disclosure of Finance Charge, and Itemization of the Amount Financed in Closed End*

*Transactions,* 6 Geo. Mason L. Rev. 191, *216, 223* (1998).

146. Congress has expressly delineated areas in which TILA preempts state laws.

The relevant preemption provision states that except as specified in 15 U.S.C. 41 §§1635,

1640, and 1666e, this title and the regulations issued hereunder do not affect the validity or

enforceability of any contract or obligation under State or Federal law.  15 U.S.C. § 1610(d).

The Court of Appeals has held that, "[i]f the federal law expressly states a preemptive intent,

that intent will govern." *Harrison v. Schwartz,* 319 Md. 360 (1990). By excepting 15 U.S.C.

§1635, which includes the rescission provisions, from the provisions of the statute not

affecting the validity and enforceability of a contract under state law, Congress has expressly

preempted state law in this area.

147. Rescission is a complete defense to foreclosure. Since a valid rescission

automatically voids the security interest, the creditor is unsecured and it has no interest in the

property on which to foreclose.  Furthermore, the courts may enjoin a foreclosure sale of a

home until the homeowner's rescission claim has been adjudicated.  National Consumer Law

Center, Truth In Lending, §§ 6.6.3.1, 363 (4[a] ed. 1999).

148. Based upon the foregoing law and facts identified, declaration of the

rescission and/or more time and investigation is necessary.  In *Lerner v. Lerner,* 306 Md.

771, 784 (1986), the Court of Appeals held:

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 27 of 31

It will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.

149. Allowing the sale would not only be a disservice to Mr. Kelly, but also to the State of Maryland. *See O'Donnell Const, Co. v. District of Columbia.* 963 F.2d *420, 429 (D.C.* Cir. 1992) (holding that "issuance of a preliminary injunction would serve the public's interest in maintaining procedures that comply with public policy requirements"). *See also,* Maryland Rule 14-211.

150. Mr. Kelly expressly denies that any sum is now due by him or to the note holder upon which this action is based.

## RELIEF REQUESED

**WHEREFORE,** Mr. Kelly prays that:

A. The Court determine that Third-Party Defendants violated state and federal law including, the TILA;

B. The Court determine that Mr. Kelly rescinded the relevant loan pursuant to the TILA; That, consequently, the relevant loan is not secured;

C. The Court determine that IndyMac and/or OneWest failed to comply with the requirements of TILA and are subject to liability;

D. The Court award appropriate injunctive relief to prevent further violations of law, including a preliminary and permanent injunction on any foreclosure actions currently pending or to be instituted against Mr. Kelly;

E. The Court award Mr. Kelly relief under the MCPA and the MMFPA in an amount to be determined at trial but not less than $50,000;

F. The Court award Mr. Kelly compensatory damages in an amount to be determined

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

at trial but not less than $200,000;

G.  The Court award Mr. Kelly relief punitive damages in an amount to be determined at trial but not less than $1,000,000;

H.  The Mr. Kelly be awarded costs, including reasonable attorney's fees as permitted under MCPA and MMFPC;

I.  The Court order, pursuant to Md. Code Ann. Com. Law § 12-807, that National Capital Title return to Mr. Kelly all monies paid to National Capital Title directly or indirectly as finder's fees by Mr. Kelly under the transaction and all reasonable interest thereon;

J.  The Court order that National Capital Title, pursuant to Md. Code Ann. Com. Law § 12-807, forfeit to Mr. Kelly three (3) times the amount of the finder's fee collected; and

K.  Provide Mr. Kelly such other and further relief as the nature of his cause may require.

## DEMAND FOR JURY TRIAL

Third-Party Plaintiff demands a trial by jury on all causes of action set forth herein allowed under the rules of law.

Respectfully Submitted,

Philip Cronan
Hollis, Cronan & Coale, LLP
208 E. Dover Street
Easton, Maryland 21601
Phone: (410) 822-8822
Fax: (410)822-0264
Attorneys *for Defendant*

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 29 of 31

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2009, that a copy of the foregoing Third-Party Complaint and Demand for Jury Trial was served by mail to Jacob Geesing, et al at Bierman, Geesing & Ward, LLC., at 4520 East West Highway, Suite 200, Bethesda, Maryland 20814.

Philip Cronan

## FURTHER CERTIFICATION

I hereby further certify that a copy of the foregoing Third-Party Complaint and Demand for Jury Trial will be served with the summons issued by the Clerk of the Court on the Third Party Defendants along with copies of the other filings in this matter as required under the Maryland Rules and by private process service.

Philip Cronan

Hollis, Cronan
& Coale, LLP
208 East Dover Street
Easton, Maryland 21601
Tel: 410.822.8822

Third Party Complaint
Page 30 of 31

**AFFIRMATION**

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY AND UPON

PERSONAL KNOWLEDGE THAT THE FACTUAL CONTENTS OF THE FOREGOING

THIRD-PARTY COMPLAINT AND DEMAND FOR JURY TRIAL ARE TRUE AND

ACCURATE TO THE BEST OF MY KNOWLEDGE, BELIEF AND UNDERSTANDING.

Patrick Kelly